UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION


PEDRO AMANDO MEJIA,

               Petitioner,

-vs-                                              Case No. 8:05-cv-1485-T-24MSS

SECRETARY, DEPARTMENT OF CORRECTIONS,

               Respondent.

_____

## **ORDER**

This cause is before the Court on Petitioner Mejia's 28 U.S.C. § 2254 petition for writ of habeas corpus. Petitioner challenges his conviction and sentence entered by the Circuit Court for the Tenth Judicial Circuit, Polk County, Florida. A review of the record demonstrates that, for the following reasons, Mejia's petition must be **DENIED**.

PROCEDURAL BACKGROUND

On May 12, 2000, Mejia was charged by information with one count of sexual battery on a person less than 12 years of age; three counts of lewd act; and one count of sexual battery. (Vol. 1: R 2-5).[1] After trial on January 30-31, 2001, the jury found Mejia guilty of the five offenses as charged. (Vol. 1: R 13-17; Vol. 5: T 814). On January 31, 2001, the state

---

[1] Respondent filed the five-volume record on direct appeal as Respondent's Exhibit 19. Volume one contains the documents and pleadings and is referred to as "Vol. 1" followed by the page number located in the lower right hand corner of the page. The trial proceedings are found in volumes one through five, and are referenced by volume number, followed by the symbol "T" and the page number located in the upper right hand corner of the page.

trial court imposed a sentence of life imprisonment on Count I (sexual battery on a child under twelve years of age) and a fifteen-year prison sentence on each of the remaining four counts, with all counts running concurrently except Count IV (sexual battery), which runs consecutive to the life sentence in Count I. (Vol. 1: R 18-28).

Mejia appealed the conviction and sentence, raising one issue:

> Whether the trial court erred in failing to allow Appellant's trial counsel to question the victim witness during the Appellant's case regarding prior inconsistent statements, ruling that because Appellant did not question the witness on cross-examination, the opportunity was lost, where the rule clearly says that prior inconsistent statements "may" be drawn out on cross examination?

(Exhibit 1).

On May 31, 2002, in appellate case no. 2D01-1110, the state district court of appeal per curiam affirmed Mejia's conviction and sentence. (Exhibit 3). Mejia v. State, 821 So. 2d 1068 (Fla. 2d DCA 2002)[Table].

On January 2, 2003, Mejia filed a rule 3.850 motion for postconviction relief. (Exhibit 5). Mejia raised five allegations of ineffective assistance of trial counsel in that motion, claiming counsel was ineffective for: (1) failure to allow the Defendant to testify; (2) failure to investigate a witness; (3) failure to impeach the victim; (4) failure to have an independent medical expert examine the victim; (5) failure to act on grounds 1-4.

On April 1, 2003, the state trial court summarily denied grounds four and five of the motion, and directed the State to respond to grounds one, two, and three. (Exhibit 6). On May 31, 2002, the State filed a response stating that an evidentiary hearing on grounds one, two and three was appropriate. (Exhibit 7).

An evidentiary hearing was held on December 30, 2003. (Exhibit 8). Mejia was represented by court-appointed counsel who presented two witnesses, Jeffrey Scott Neace, and Veronica Hernandez; however, his former defense counsel, L. B. (Lincoln Brook) Hunt, did not appear. The hearing was continued, and a second hearing was held on February 20, 2004. Attorney Hunt was present and testified. Mejia also testified. (Exhibit 9). The state trial court reserved ruling on the rule 3.850 motion.

On March 24, 2004, the state trial court issued a final written order denying the remaining grounds in the motion for postconviction relief, stating:

> 4. The defendant has not established a basis for a new trial under ground one. Trial counsel testified that it was his normal practice to discuss the issue with his client. The Court has had an opportunity to hear and see the defendant in regards to his testimony on this issue, and finds his testimony on this issue to be unbelievable in light of the fact that the trial judge asked trial counsel in the presence of the defendant "is your client going to testify?" (T. p. 718). Mr. Hunt replied that he did not believe he was. This exchange occurred just before the noon recess (T. p.730), and the defense rested after calling Jose Bermudez. (T. p. 472).
>
> 5. The defendant has not established a basis for a new trial under ground two for failure to investigate the possible witness Veronica Hernandez. This witness testified at the hearing that she was a family friend that had conversations with the child victim and that the child was unhappy living with the defendant and her mother and would prefer living with her father. This witness also testified that she had been told by the victim's mother that she was unhappy with the defendant and had asked him to move out of the house but that he had refused. This testimony would have gone to bias and motive, but did not deal directly with the elements of the offenses charged. This witness testified that she was contacted by the investigator working for the defense counsel after the defendant's arrest; however, she did not tell the investigator about the discussions with the child or mother. It therefore appears that the defense counsel was not ineffective for failing to investigate this witness, and even if the witness had disclosed this bias testimony and it had been offered for the jury's consideration, it is not probable that it would have changed the verdict given the fact that the bias of the two witnesses was apparent from the testimony. As indicated in the conference with the Court prior to opening statements (T. p. 226-230), the

> victim did not conceal her bias against the defendant, and, in fact, the prosecutor said "It's going to be clear that she didn't like him." The child testified (T. p. 283) that she did not like him. She testified that her relationship with the defendant was not very good. (T. p. 285). The victim testified that "I hate him for what he's done" and "for treating my mom like dirt" (T. p. 314). On cross-examination the victim testified that she did not like the defendant and did not know why her mother was staying with him. It is clear from a review of the record that the possible testimony of Veronica Hernandez would not have added anything to the defense's case.
>
> 6. The defendant has not established a basis for a new trial under ground three for failure of counsel to impeach the child victim with a prior oral statement contained in the report of Det. Neace. Defense counsel did a lengthy cross-examination which challenged the motivations and credibility of the child victim. The victim testified that the sexual abuse began when she was nine years of age and occurred almost every day when she lived in Eaton Park. (T. p. 367). This trial took place in January, 2001, and the initial sexual abuse took place in April 1997. The child testified that she was assaulted as many as 50 or 60 times by the defendant. The trial counsel attempted to call the child victim as a defense witness for the purpose of asking her about her prior initial statement to Det. Neace, with the intention of then calling Det. Neace to impeach her. This would be improper, and the trial judge denied the request. In order to prevail on this ground the defendant must show that a reasonable probability exists that if counsel had laid the predicate during the cross-examination of the victim, then called Det. Neace to impeach her that the outcome would probably have been different. No reasonable person would expect a nine year of age child to recall each detail of fifty sexual assaults. The child testified that the assaults involved masturbation and attempted penetration. The Court does not find that the failure to challenge the child on the possible inaccuracy of the detective's report undermines the court's confidence in the verdict.

(Order on Motion for Postconviction Relief [Exhibit 11 at pp. 1-2]).

Mejia appealed the orders denying postconviction relief raising two issues:

### Issue One

WHETHER THE TRIAL COURT ERRED IN DENYING THE APPELLANT'S MOTION FOR POSTCONVICTION RELIEF RELATED TO THE ALLEGATION THAT TRIAL COUNSEL WAS INEFFECTIVE FOR INTERFERING WITH THE APPELLANT'S RIGHT TO TESTIFY?

Issue Two

WHETHER THE TRIAL COURT ERRED IN DENYING THE APPELLANT'S MOTION FOR POSTCONVICTION RELIEF RELATED TO THE ALLEGATION THAT TRIAL COUNSEL WAS INEFFECTIVE FOR FAILING TO PROPERLY IMPEACH THE ALLEGED VICTIM?

(Exhibit 12)

On February 11, 2005, in Case No. 2D04-1777, the state district court of appeal per curiam affirmed the state trial court's denial of postconviction relief. (Exhibit 15). Mejia v. State, 902 So. 2d 151 (Fla. 2d DCA 2005)[Table]. Mejia filed a pro se motion for rehearing (Exhibit 16), which the state district court of appeal denied March 24, 2005. (Exhibit 17). The mandate issued April 12, 2005. (Exhibit 18).

The Present Petition

Mejia signed the § 2254 petition on August 4, 2005; the petition was filed timely on August 12, 2005. (Doc. No. 1).  Mejia raises three allegations of ineffective assistance of trial counsel: (1) Counsel was ineffective for interfering with Mejia's right to testify in his own behalf; (2) counsel was ineffective for failing to impeach the child victim with inconsistent statements made to Detective Neace; (3) counsel was ineffective for failing to call Veronica Hernandez as a potential exculpatory witness.

STANDARD OF REVIEW

Mejia's federal petition is governed by the Antiterrorism and Effective Death Penalty Act ("AEDPA") effective April 24, 1996. The AEDPA "establishes a more deferential standard of review of state habeas judgments," Fugate v. Head, 261 F.3d 1206, 1214 (11th Cir. 2001), in order to "prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." Bell v. Cone, 535 U.S. 685,

693 (2002); see also, Bell v. Cone, 543 U.S. 447 (2005) (habeas court's standard for evaluating state-court ruling is highly deferential, which demands that state-court decisions be given benefit of the doubt)[citing 28 U.S.C.A. § 2254(d)]). Pursuant to 28 U.S.C. § 2254:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2).[2]  Finally, a factual finding by a state court is presumed to be correct, and a petitioner must rebut the presumption of correctness by clear and convincing

---

[2] "Clearly established Federal law" is the governing legal principle, not the dicta, set forth by the United States Supreme Court at the time the state court issues its decision. Lockyer v. Andrade, 538 U.S.63, 71-72 (2003). Where no Supreme Court precedent is on point, or the precedent is ambiguous, it cannot be said that the state court's conclusion is contrary to clearly established governing federal law. Mitchell v. Esparza, 540 U.S. 12 (2003); Clark v. Crosby, 335 F.3d 1303, 1308-10 (11th Cir. 2003).

A state court decision is "contrary to" the Supreme Court's clearly established precedent within the meaning of § 2254(d)(1) only if the state court applies a rule that contradicts the governing law as set forth in Supreme Court case law, or if the state court confronts a set of facts that are materially indistinguishable from those in a decision of the Supreme Court and nevertheless arrives at a result different from Supreme Court precedent. Brown v. Payton, 544 U.S. 133 (2005); Williams v. Taylor, 529 U.S. 362, 405-06 (2000)). A state court does not have to cite the Supreme Court precedent, or even be aware of it, so long as neither its reasoning nor its result contradicts Supreme Court precedent. Early v. Packer, 537 U.S. 3, 8 (2002); Parker v. Secy of Dept. of Corrections, 331 F.3d 764, 775-76 (11th Cir. 2003).

"A state-court decision involves an unreasonable application of this Court's clearly established precedents if the state court applies this Court's precedents to the facts in an objectively unreasonable manner." Brown v. Payton, 544 U.S. at 141. An objectively unreasonable application of precedent occurs when (1) a state court identifies the correct legal rule but unreasonably applies it to the facts or (2) a state court either unreasonably extends a legal principle from precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply. Diaz v. Sec'y for the Dep't of Corr., 402 F.3d 1136, 1141 (11th Cir. 2005).

-6-

evidence. 28 U.S.C. § 2254(e)(1); Henderson v. Haley, 353 F.3d 880, 890-91 (11th Cir. 2003).

## INEFFECTIVE ASSISTANCE OF COUNSEL CLAIMS

To show a violation of the Sixth Amendment right to counsel, Mejia must satisfy the two-pronged inquiry of Strickland v. Washington, 466 U.S. 668, 687 (1984). Bell v. Cone, 535 U.S. 685, 698 (2002)(courts should apply Strickland to claims that counsel failed to satisfy constitutional requirements at specific points). The standards of effective assistance set forth in Strickland apply to appellate counsel, as well as to trial counsel. Matire v. Wainwright, 811 F.2d 1430, 1435 (11th Cir. 1987). First, Mejia must demonstrate that the attorney's performance was deficient, meaning that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Strickland, 466 U.S. at 687. Second, Mejia must prove prejudice, in that he "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." 466 U.S. at 694. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694. Mejia must prove both prongs of Strickland. Therefore, if Mejia fails to establish either deficient performance or prejudice, the court need not address the other prong. Strickland, 466 U.S. at 697 ("There is no reason for a court deciding an ineffective assistance claim to . . . address both components of the inquiry if the defendant makes an insufficient showing on one. "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed."); Sims v. Singletary, 155 F.3d 1297, 1305 (11th Cir. 1998). In this case, the state district court of

appeals's denial of Mejia's ineffective counsel claims is neither contrary to, nor an unreasonable application of, the Strickland standard.

## DISCUSSION

### Ground One

Mejia alleges that trial counsel was ineffective for interfering with Mejia's right to testify in his own behalf. Mejia contends that he wanted to testify, but during pretrial discussions his lawyer advised against his doing so. (See Petition at pp. 5-5A). Later, according to Mejia, during trial, defense counsel did not confer with Mejia regarding his decision whether to testify, and instead told the court he did not believe Mejia would testify.

Mejia was afforded an evidentiary hearing to resolve this issue. After reviewing the record and considering the testimony of Mejia and trial counsel, the state trial court determined Mejia's claim that trial counsel prevented his testifying was not credible. The state trial court's credibility finding is supported by the record as well as the testimony at the evidentiary hearing. Trial counsel, who was an experienced criminal defense attorney, testified at the postconviction hearing that it was his normal practice to discuss the issue with his client. (Exhibit 9 at pp. 10-12). Moreover, in its order denying the rule 3.850 motion, the state trial court noted that the state trial court trial judge asked defense counsel in the presence of Mejia, "Is your client going to testify?" (Vol. 5: T 718). Defense counsel Hunt replied, "I still have to talk to him and review it with him. I don't think so." (Vol. 5: T 718-719). This exchange occurred just before the noon recess (Vol. 5: T 730), and the defense rested after calling Jose Bermudez. (Vol. 5: T 742). The reasonable conclusion from the record is that defense counsel spoke with Mejia during the recess about testifying, as was

-8-

counsel's customary practice, and Mejia elected not to testify. The state court's factual finding is entitled to a presumption of correctness, and Mejia has not rebutted this presumption by clear and convincing evidence. See 28 U.S.C. § 2254(e)(1). Accordingly, the state court's ruling did not result in a decision that contrary to, or an unreasonable application of, the Strickland standard.

Ground one does not warrant habeas corpus relief.

## Ground Two

Mejia asserts his attorney was ineffective for failing to impeach the victim with an alleged prior inconsistent statement. Specifically, Mejia refers to the victim's trial testimony that the first sexual incident only entailed rubbing Mejia's penis until he ejaculated, whereas the victim told Detective Neace during the investigation that the first incident involved Mejia's attempting to place his penis inside the victim's vagina.

The state trial court reasonably concluded that defense counsel was not ineffective for failing to impeach the victim with this minor inconsistency. Defense counsel conducted a lengthy cross-examination that challenged the motivations and credibility of the child victim. (Vol. 3: T 319-389). The state trial court's order denying relief on this claim points out that:

> The victim testified that the sexual abuse began when she was nine years of age and occurred almost every day when she lived in Eaton Park. (T. p. 367). This trial took place in January, 2001, and the initial sexual abuse took place in April 1997. The child testified that she was assaulted as many as 50 or 60 times by the defendant. The trial counsel attempted to call the child victim as a defense witness for the purpose of asking her about her prior initial statement to Det. Neace, with the intention of then calling Det. Neace to impeach her. This would be improper, and the trial judge denied the request. In order to prevail on this ground the defendant must show that a reasonable probability exists that if counsel had laid the predicate during the

> cross-examination of the victim, then called Det. Neace to impeach her that the outcome would probably have been different. No reasonable person would expect a nine year of age child to recall each detail of fifty sexual assaults. The child testified that the assaults involved masturbation and attempted penetration. The Court does not find that the failure to challenge the child on the possible inaccuracy of the detective's report undermines the court's confidence in the verdict.

(Order on Motion for Postconviction Relief [Exhibit 11at p. 2]). The state trial court's analysis of this claim is objectively reasonable.

Alternatively, even if trial counsel's performance were deficient on this matter, Mejia could not establish prejudice. As the state trial court noted, the record reveals that the victim gave extensive detailed testimony regarding the continued sexual abuse Mejia inflicted on her from the time she was nine years old until she was twelve years old. The child victim testified that in the initial sexual encounters Mejia forced her to masturbate him. (Vol. 2: T 290-291). The child remembered that she was wearing her school uniform the first time Mejia abused her. (Vol. 2: T 290). Once the sexual abuse started, the acts occurred almost every day. (Vol. 2: T 292-293, 296-297). These encounters soon escalated, and Mejia began taking the child into his bedroom and, after removing her pants or underwear, repeatedly attempted to penetrate the victim's vagina with his penis. (Vol. 2: T 293- 295). Mejia abused her almost every day, while her mother was at work. The child testified that she was sexually abused 50 to 60 times while the family was staying at one residence. (Vol. 3: T 300). Once the victim began to menstruate Mejia would put on Trojan condoms before he even touched her vagina with his penis. (Vol. 2: T 309). Mejia used Vaseline as a lubricant in his attempts to penetrate the victim's vagina with his penis. (Vol. 2: T 310). Mejia would ejaculate on her or into a handkerchief (Vol. 2: T 297, 310).

The child victim's allegations were corroborated by expert testimony that physical examination of the child's genitalia showed two transections (old healed tears down to the base or to the wall of the opening) of the hymen which were diagnostic of a "penetrating trauma" which was consistent with sexual abuse. (Vol. 5: T 573-574). Further, the victim's mother testified that she first noticed a jar of Vaseline in the bathroom when the family moved to Eaton park where the assaults began. (Vol. 4: T 485). A jar of Vaseline was later recovered from the defendant's bathroom by Detective Neace. (Vol. 4: T 517-518). As the state trial court correctly concluded, Mejia failed to establish that he was prejudiced by any alleged error regarding a failure to impeach the child with a relatively minor inconsistent statement.

Ground two does not warrant habeas corpus relief.

### Ground Three

Mejia contends his trial counsel was ineffective for failing to investigate and call Veronica Hernandez as a potential exculpatory witness. Mejia alleges that counsel was provided with Ms. Hernandez's name, and that the witness was available. This witness could have offered testimony that she was a friend of the family, had visited the home numerous times, that the victim had bluntly stated she hated Mejia because he argued with her and would not allow her to spend money as she wished, and that she wanted her biological father to live with her. In short, Mejia alleges Ms. Hernandez could have brought out bias and motive on the victim's part. Mejia is not entitled to relief on this claim for at least two reasons.

First, although Mejia raised this claim in his rule 3.850 motion in the state trial court, and the issue was addressed at the evidentiary hearing, this claim is unexhausted and procedurally barred because Mejia failed to raise this specific issue and present argument in support of the argument in his brief on appeal from the denial of the rule 3.850 motion. In Florida, exhaustion of rule 3.850 claims includes an appeal from its denial. Leonard v. Wainwright, 601 F.2d 807 (11th Cir. 1979). When a rule 3.850 motion has been denied after an evidentiary hearing, the applicable rule provides a briefing schedule. See Fla. R. App. P. 9.141(b)(3)(C).

Pursuant to state procedural rules, submission of a brief without argument on a particular issue results in a waiver of that issue in an appeal of an order denying relief after an evidentiary hearing. See, e.g., Shere v. State, 742 So. 2d 215, 224 n.6 (Fla. 1999)("In a heading in his brief, Shere asserts that the trial court erred by summarily denying nineteen of the twenty-three claims raised in his 3.850 motion. However, for most of these claims, Shere did not present any argument or allege on what grounds the trial court erred in denying these claims. We find that these claims are insufficiently presented for review."); see also, Duest v. Dugger, 555 So. 2d 849 (Fla. 1990)(Duest also seeks to raise eleven other claims by simply referring to arguments presented in his motion for postconviction relief. The purpose of an appellate brief is to present arguments in support of the points on appeal. Merely making reference to arguments below without further elucidation does not suffice to preserve issues, and these claims are deemed to have been waived); Tompkins v. State, 872 So. 2d 230, 244 (Fla. 2003)(declining to address appellant's requests to the Hillsborough County Sheriff's Office, the Department of Corrections, the Florida Parole

Commission and the Board of Executive Clemency because appellant failed to present any argument as to how the state trial court erred in denying the motion to compel with respect to those agencies); Coolen v. State, 696 So.2d 738, 742 n. 2 (Fla. 1997) (explaining that the defendant's "failure to fully brief and argue" specific points on appeal "constitutes a waiver of these claims").

Although Mejia did appeal the denial of his postconviction motion, he challenged the state trial court's denial of only two of his postconviction claims. The allegations asserted in ground three of this federal petition was not one of those two. (See Exhibit 12). Because Mejia's postconviction appeal was from a rule 3.850 order after an evidentiary hearing, Mejia was obliged to file a brief upon appealing the denial of postconviction relief. His attorney's election to raise only two of Mejia's claims of ineffective assistance of trial counsel operated to waive and bar all remaining claims in his rule 3.850 motion.

A § 2254 petition cannot be granted unless a petitioner "has exhausted the remedies available in the courts of the State; . . ." 28 U.S.C. 2254(b)(1)(A); Snowden v. Singletary, 135 F.3d 732, 735 (11th Cir. 1998). "In other words, the state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition." O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999). See also, Henderson v. Campbell, 353 F.3d at 891 ("A state prisoner seeking federal habeas relief cannot raise a federal constitutional claim in federal court unless he first properly raised the issue in the state courts.")(quoting Judd v. Haley, 250 F.3d 1308, 1313 (11th Cir. 2001)); Duncan v. Henry, 513 U.S. 364, 365 (1995)("Exhaustion of state remedies requires that the

state prisoner fairly present federal claims to the state courts in order to give the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights").

"The teeth of the exhaustion requirement comes from its handmaiden, the procedural default doctrine." Smith v. Jones, 256 F.3d 1135, 1138 (11th Cir. 2001). Under the procedural default doctrine, "if the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief, unless either the cause and prejudice or the fundamental miscarriage of justice exception is applicable." Smith v. Jones, 256 F.3d at 1138.[3]

Pre-AEDPA decisions from the Supreme Court establish the framework governing procedural default in federal habeas cases. A procedural default will only be excused in two narrow circumstances. First, petitioner may obtain federal habeas review of a procedurally defaulted claim if he shows both "cause" for the default and actual "prejudice" resulting from the default. "Cause" ordinarily requires petitioner to demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in the state court. Henderson v. Campbell, 353 F.3d at 892; Marek v. Singletary, 62 F.3d 1295, 1302 (11th Cir. 1995). To show "'prejudice,'" the petitioner must show "not merely that the errors at his trial created a possibility of prejudice, but that they worked to his factual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." Hollis v. Davis, 941 F.2d 1471, 1480 (11th Cir. 1991) (quoting United States v. Frady, 456 U.S. 152, 170 (1982). The petitioner must show that there is at least a reasonable probability that the

---

[3] "The doctrine of procedural default was developed as a means of ensuring that federal habeas petitioners first seek relief in accordance with established state procedures." Henderson v. Campbell, 353 F.3d at 891 (quoting Judd v. Haley, 250 F.3d at 1313).

result of the proceeding would have been different. Henderson v. Campbell, 353 F.3d at 892.

Second, a petitioner may obtain federal habeas review of a procedurally defaulted claim, without a showing of cause or prejudice, if such review is necessary to correct a fundamental miscarriage of justice. Edwards v. Carpenter, 529 U.S. 446, 451 (2000); Henderson v. Campbell, 353 F.3d at 892. This exception is only available "in an extraordinary case, where a constitutional violation has resulted in the conviction of someone who is actually innocent." Henderson v. Campbell, 353 F.3d at 892.

The fundamental miscarriage of justice exception concerns a petitioner's "actual" innocence rather than his "legal" innocence. Johnson v. Alabama, 256 F.3d 1156, 1171 (2001) (citing Calderon v. Thompson, 523 U.S. 538, 559 (1998)); Murray v. Carrier, 477 U.S. 478, 495-96 (1986) (explaining that a "fundamental miscarriage of justice" occurs "in an extraordinary case, where a constitutional violation has resulted in the conviction of someone who is actually innocent"). To meet this standard, a petitioner must "show that it is more likely than not that no reasonable juror would have convicted him" of the underlying offense. Schlup v. Delo, 513 U.S. 298, 327 (1995). In addition, "'to be credible,' a claim of actual innocence must be based on [new] reliable evidence not presented at trial." Calderon, 523 U.S. at 559 (quoting Schlup, 513 U.S. at 324) (explaining that given the rarity of such evidence, in virtually every case, the allegation of actual innocence has been summarily rejected) (internal quotation marks omitted).

The Schlup Court stated the petitioner must show constitutional error coupled with new reliable evidence -- whether it be exculpatory scientific evidence, trustworthy

eyewitness accounts, or critical physical evidence -- that was not presented at trial. Schlup, 513 U.S. at 324. This fundamental miscarriage of justice exception is not available unless "the petitioner shows, as a factual matter, that he did not commit the crime of conviction." Ward v. Cain, 53 F. 3d 106, 108 (5th Cir. 1995) (denying certificate of probable cause). In this case, Mejia has presented no facts, argument, or newly discovered evidence to demonstrate cause and prejudice or a miscarriage of justice to excuse the procedural bar.

Alternatively, the third claim fails to satisfy the requirements of 28 U.S.C. § 2254(d) and (e). The state trial court's denial of this claim was objectively reasonable in that Mejia could not establish either prong of the Strickland test. Ms. Hernandez testified at the postconviction hearing that she was contacted by the investigator working for the defense counsel after Mejia's arrest; however, she did not tell the investigator about the discussions with the child or mother. (Exhibit 8 at pp. 40- 41). Consequently, there was no failure on trial counsel's part to investigate this witness, and counsel was unaware of the witness's potential testimony.

More important, however, even if Ms. Hernandez had been called at trial, her testimony would not have changed the result of the proceeding. As the state trial court correctly found, the bias of the child victim and her mother was apparent from the trial testimony. As indicated in the conference with the state trial judge prior to opening statements (Vol. 2: T 228-229), the victim did not conceal her bias against the defendant, and, in fact, the prosecutor said "It's going to be clear that she didn't like him." (Vol. 2: T 228). The child testified that she did not like Mejia. (Vol. 2: T 283, 284) She testified that her relationship with Mejia was not very good. (Vol. 2: T 285). Furthermore, the victim

testified, "I hate him for what he's done" and "for treating my mom like dirt." (Vol. 3: T 314). In summary, any testimony by Ms. Hernandez that the child victim had a poor relationship with Mejia would not have affected the jury verdict under the circumstances of this case. Therefore, even if ground three had been exhausted in the state courts, Mejia would not be entitled to relief on this claim.

Ground three does not warrant habeas corpus relief.

Accordingly, the Court orders:

That Petitioner Mejia's petition for writ of habeas corpus is denied, with prejudice. The Clerk is directed to enter judgment against Mejia and to close this case.

IT IS FURTHER ORDERED that petitioner is not entitled to a certificate of appealability. A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a certificate of appealability (COA). Id. "A [COA] may issue ⋯ only if the applicant has made a substantial showing of the denial of a constitutional right." Id. at § 2253(c)(2). To make such a showing, petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further, ' " Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n. 4 (1983)). Petitioner has not made the requisite showing in these circumstances.

Finally, because Petitioner is not entitled to a certificate of appealability, he is not entitled to appeal in forma pauperis.

ORDERED at Tampa, Florida, on October 31, 2006.

                                              SUSAN C. BUCKLEW
                                              United States District Judge

Counsel of Record

Pedro Amando Mejia